Timothy M. Bechtold
Bechtold Law Firm, PLLC
317 East Spruce Street
P.O. Box 7051
Missoula, MT 59807-7051
406-721-1435
406-830-3085 (fax)
tim@bechtoldlaw.net

Attorneys for Estate of Glowdena B. Finnigan

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | | |
|---|---|---|
| **ESTATE OF GLOWDENA B. FINNIGAN,** | ) | **CV 18-109-M-DLC-JCL** |
| | ) | |
| | ) | **PLAINTIFF'S BRIEF IN** |
| Plaintiff, | ) | **SUPPORT OF ITS MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| vs. | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** …………………………………..……...2

**TABLE OF AUTHORITIES** ………………………………....…………3

**INTRODUCTION** …………………………………………………………..4

**ARGUMENT** ……………………………………………………6

    **I. Summary Judgment is Proper in this Case** ………………...………6

    **II. This Court's Decision in *Avista*** …………………………..………6

    **III. The Ninth Circuit's Decision in *Avista*** ………………..………8

    **IV. The *Avista* Remand Decision** ……………………………………10

    **V. The 1980 Decree of Abandonment and the Consent of the United States to the Entry of that Decree** ……………………………………11

    **VI. The Effect of the *Bennett* Decree** ………………………...………13

        **A. Under 43 U.S.C. §912** …………………………………………13

        **B. The doctrine of preclusion yields the same result as the plain language of §912** ……………………………………………..15

        **C. 16 U.S.C. §1248(c) Does Not Change the Result Required by §912 and the Doctrine of Preclusion** …………………………...………17

            **i. *Olson* Confirmed the Result in *Bennett*** ………..……….20

            **ii. *Noxon Fire* also Confirms *Bennett*, Again with the Consent of the United States** ………………………………20

            **iii. *Finnigan* Again Confirms the Abandonment, with Specific Applicability to the Finnigan Property** …….……..21

**CONCLUSION** ……………………………………………………...………22

**CERTIFICATE OF COMPLIANCE** ………………..…………………24

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)      ……………………….6

*Avista Corp., Inc. v. Sanders County,* 485 F.Supp.2d 1176 (D. Mont. 2007) … ……………………………………………………………………………….*passim*

*Avista Corp., Inc. v. Wolfe,* 549 F.3d 1239 (9th Cir. 2008) …………………..*passim*

*Avista v. Sanders Co.*, 2009 WL 10694949 at *2 (D. Mont. June 29, 2009) ....11,17

*Avista Corp., Inc. v. Sanders County,* 405 Fed. Appx. 225 (9th Cir. 2010)……….11

*Baltrusch v. Baltrusch,* 130 P.3d 1267, 1276 (Mont. 2006) …………………14,15

*Bennett v. United States, et al.*, No. 6262 (Sanders Co., Mont.  Nov. 25, 1980) …. ……………………………………………………………………………….*passim*

*Finnigan v. Burlington Northern Railroad Co.,* No. DV-96-46 (Sanders Co., Mont. Dec. 10, 1996)…………………………………………………………………20,21

*Jonas v. Jonas,* 2014 WL 978099 (D. Mont. Mar. 12, 2014)………………13,14,15

*McDaniel v. State,* 208 P.3d 817, 825 (Mont. 2009) ……………………………..14

*Noxon Rural Fire District v. Evans,* No. DV-96-06 (Sanders Co., Mont. Nov. 12, 1996) …………………………………………………………………..9,10,19,20,21

*Olson v. County of Sanders, et al.*, No. DV-85-37 (Sanders Co., Mont. Oct. 13, 1987) …………………………………………………………………………19

## STATUTES

16 U.S.C. §1248 …………………………………………………………….*passim*

28 U.S.C. §2412 ………………………………………………………………….23

43 U.S.C. §912 ………………………………………………………..……..*passim*

MCA §70-28-101 ………………………..…………………………………….13

## <u>INTRODUCTION</u>

This is a quiet title action by the Estate of Glowdena B. Finnigan on behalf of and for the benefit of the four individuals who are the heirs of the Estate. *See* Plaintiff's Statement of Undisputed Facts (SUF) Ex. 25 ¶1. This action involves property owned by the Estate in Sanders County, Montana, hereinafter referred to as "the Finnigan Property." SUF ¶1. The Finnigan Property is traversed by the same abandoned stretch of Northern Pacific Railroad ("NPR") right of way that this Court and the Ninth Circuit addressed in *Avista Corp., Inc. v. Sanders County,* 485 F.Supp.2d 1176 (D. Mont. 2007), *aff'd in part and rev'd in part, Avista Corp., Inc. v. Wolfe,* 549 F.3d 1239 (9th Cir. 2008). SUF ¶¶3-4, 9. It is undisputed that the property involved in the *Avista* case is located in a section that shares a common corner with the section in which the Finnigan Property is located. SUF ¶3; *see also,* United States' Preliminary Pretrial Statement, Dkt#12 at 3.

This case presents a significant and controlling set of undisputed facts and a legal issue that was not dealt with in *Avista.* These facts consist of undisputed documentary evidence that NPR's abandonment of the section of right of way that includes the Finnigan Property was confirmed by a court decree entered in 1980 by the Sanders County District Court. *Bennett v. United States, et al*., No. 6262 (Sanders Co., Mont. Nov. 25, 1980). In that case, the United States was named as a party and expressly consented to the entry of a final judgment confirming the fact

that the right of way in question was abandoned by NPR in the 1950s.  SUF ¶¶10-12.

In the discussion that follows, Plaintiff will demonstrate that the entry of the judgment in *Bennett* ended whatever residual interest the United States may have had in the abandoned NPR right of way on the south side of the Clark Fork River from approximately two miles west of Trout Creek, Montana, to approximately four miles west of Noxon, Montana.  SUF ¶7.  This section of the NPR right of way is shown on the map included as Exhibit 2 and on "Exhibit A" to Plaintiff's SUF Exhibit 4.

The conclusion that any residual interest of the United States was extinguished in 1980 is supported by (1) the decisions in *Avista,* which confirm that the right-of-way abandonment that occurred in the 1950s was a singular event of abandonment of an entire section of right of way that includes the Bennett Property, the Finnigan Property, and several other parcels of privately owned land*;* (2) the doctrine of issue preclusion; (3) the provisions of 43 U.S.C. §912, which provide for reversion of abandoned railroad rights of way to private ownership; (4) the legislative history of 16 U.S.C. §1248(c), which prospectively ended reversion to private ownership of railroad rights of way, but only for rights of way abandoned after October 4, 1988; and (5) later judicial confirmations of the abandonment first adjudicated in *Bennett*, including one in which the United States

consented to a decree of abandonment under §912, eight years after the adoption of §1248(c).

## ARGUMENT

### I.  Summary Judgment is Proper in this Case

Summary Judgment is proper in this case because "there is no genuine issue as to any material fact" and Plaintiff "is entitled to a judgment as a matter of law." FRCP 56(c).  This is clear from the admissions of the United States in the two cases referred to above, the decisions in *Avista,* and the documentary evidence attached to Plaintiff's SUF.  *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986) (summary judgment is proper when the documentary evidence permits only one conclusion).

### II.  This Court's Decision in *Avista*

Like this case, *Avista* involved the ownership of the same abandoned section of railroad right of way involved in this case.  Specifically, the issue was whether the owners of property traversed by the same abandoned right of way (the Hamptons) were the owners of the land within the abandoned 400 foot right of way.  This Court held the issue was governed by the 1922 Abandoned Railroad Right of Way Act, 43 U.S.C. §912.  With the exception of land within a public highway, which is not at issue in this case, §912 provides that abandoned railroad right of way becomes the property of the owner of the land traversed by the right

of way if the abandonment is declared or decreed by a court of competent jurisdiction or by an Act of Congress.

In *Avista, t*his Court discussed in detail the undisputed history of the 1950s abandonment of the entire section of right of way in question. This abandonment resulted from the construction of two hydroelectric dams on the Clark Fork River: one near Noxon, Montana (the Noxon Rapids Dam) and the other downstream on the Montana-Idaho border (the Cabinet Gorge Dam). *Avista,* 485 F.Supp.2d at 1178-79; SUF ¶5.

The impoundments created by the two dams eventually flooded significant portions of the NPR rail line on the south side of the Clark Fork River. *Id.* This, in turn, led to a decision by the NPR to abandon approximately 20 miles of right of way on the south side of the Clark Fork River and relocate the rail line to the north side of the River. *Avista,* 485 F.Supp.2d at 1179; SUF ¶7. This abandonment and relocation involved right of way from approximately two miles west of Trout Creek, Montana to approximately four miles west of Noxon, Montana.

By October, 1958, the process of abandonment of the entire section of right of way on the south side of the Clark Fork River was complete. *Avista,* 485 F.Supp.2d at 1183-85; SUF ¶7. This section of abandoned right of way traverses a number of parcels of privately-owned property along the south side of the Clark Fork River, including the property involved in the *Avista* case and the Finnigan Property. SUF ¶9; Dkt#12 at 3.

After concluding that the right of way was abandoned as of October 1958, this Court proceeded to decide whether it had the authority to enter a decree of abandonment "retroactively to 1958." *Avista,* 485 F.Supp.2d at 1185. After considering a prior Ninth Circuit decision, this Court concluded that it did have the authority to retroactively declare the right of way abandoned as of 1958. *Id.* at 1185-86. The remainder of this Court's decision in *Avista* dealt with issues not involved in this case. These issues concerned the right of Sanders County to maintain a road within the abandoned right of way and a claim of ownership of half of the right of way by Avista Corporation, which owns the Cabinet Gorge and Noxon Rapids Dams. The Court ruled against Sanders County and Avista Corporation and entered summary judgment in favor of Plaintiff's neighbors, the Hamptons. *Id.* at 1186-90. Thereafter, Avista Corporation appealed this Court's decision to the Ninth Circuit.

## III.  The Ninth Circuit's Decision in *Avista*

The Ninth Circuit agreed with this Court's conclusion "that the Northern Pacific physically abandoned the right of way in October, 1958." *Avista,* 549 F.3d at 1247. In reaching this conclusion the Ninth Circuit made it clear that "right of way" to which it referred is the entire section of right of way outlined in red on the map that is attached as Exhibit 2. However, the Ninth Circuit did not agree that a declaration of abandonment could be issued retroactively. *Id.* at 1249-52. Accordingly, the Ninth Circuit reversed this Court's retroactive application of the

abandonment declaration and remanded the case for further consideration. *Id.* at 1252.

Of controlling importance to this case, the parties in *Avista* advised the court "that prior to the district court's declaration of abandonment, neither Congress nor a court of competent jurisdiction had acted." *Id.* at 1250. In fact, as a matter of indisputable documentary evidence, *Avista* was not the first judicial declaration of abandonment of the section of right of way in question. Instead, as the discussion below will demonstrate, it was the fifth such declaration, the first having occurred in 1980, with the express consent of the United States.

Because the Ninth Circuit erroneously believed there had been no prior judicial declarations of the abandonment, it suggested that on remand this Court might have to address the implications of the National Trails System Improvements Act of 1988. *Id.* at 1251, n.12. This Act provides that, for railroad rights of way abandoned after October 4, 1988, and with the exception of public highways established within one year of abandonment, the land within an abandoned railroad right of way reverts to the United States, not, as §912 previously required, to the private owner of the land traversed by the right of way. 16 U.S.C. §1248(c). As discussed below, the applicability of §1248(c) is not an issue in this case, because its legislative history is consistent with an entry of summary judgment in Plaintiff's favor. In addition, this result was confirmed by the United States in a 1996 case, *Noxon Rural Fire District v. Evans,* No. 96-06

(Sanders County, Mont. Nov. 12, 1996), in which the United States consented to entry of a quiet title decree under §912 adjudicating the lack of any interest by the United States in the same abandoned section of right of way.

## IV.  The *Avista* Remand Decision

After *Avista* was remanded to this Court, the Hamptons moved to dismiss the claim of Avista Corporation on the ground that the Ninth Circuit's decision eliminated the legal basis of the claims asserted by Avista to half of the right of way.  In response to the Hamptons' motion, Avista moved for leave to file an amended complaint naming the United States as a party and asserting a claim that the United States may have a right of reverter under the National Trails Act. *Avista v. Sanders Co.*, 2009 WL 10694949 at *2 (D. Mont. June 29, 2009).

Avista conceded that the Ninth Circuit decision "has put its original legal theories to rest," and that Avista "has no other claim to title." *Id.* at *2, *3.  This Court noted that the only other possible claims were whether Sanders County had a right to establish a road and "whether the United States may have a right of reverter under the National Trails Act." *Id.* at *4.  The Court held these issues were not before it, because Avista had no interest in them, the Hamptons had not sought to quiet title against the United States, and Sanders County joined with the Hamptons' motion to dismiss. *Id.* at *4.  Accordingly, this Court ordered dismissal and denied Avista's motion to amend.  In a second appeal by *Avista,* the Ninth

Circuit affirmed this Court in an unpublished opinion. *Avista Corp., Inc. v. Sanders County,* 405 Fed. Appx. 225 (9th Cir. 2010).

The present case presents the issue expressly left undecided in *Avista:* whether the United States has any legitimate claim of ownership to land within the same abandoned section of right of way involved in *Avista.* For the reasons stated below, the answer is no.

## V. The 1980 Decree of Abandonment and the Consent of the United States to the Entry of that Decree

In April 1980, David Bennett filed an action in Sanders County District Court to quiet title to land traversed by the same stretch of abandoned right of way. SUF ¶10. The Declaration of Claude Burlingame, the attorney who represented Mr. Bennett and who also is probating the Estate of Glowdena Finnigan, establishes that the abandonment referred to in *Bennett* is the same abandonment this Court dealt with in *Avista. Id.*

The complaint in *Bennett* refers to the NPR right of way and alleges that the right of way traverses the Bennett Property and has been abandoned by virtue of the relocation of the NPR track in about 1954. *Id.*

The United States was named as a defendant in *Bennett* and filed a disclaimer of interest. In that disclaimer, the United States expressly disclaimed "any interest on the part of the United States of America for the reasons that the

lands involved in the [*Bennett* action] are all privately owned and the United States has no interest in this action." *Id.* ¶11.

On November 25, 1980, the court entered a judgment and decree providing that "the allegations of the complaint are true." *Id.* ¶12. The judgment refers to "the abandoned railroad right-of-way traversing the property," and quiets title to the Bennett Property as requested by Mr. Bennett. *Id.*

## VI. The Effect of the *Bennett* Decree

### A. Under 43 U.S.C. §912

When the *Bennett* decree of abandonment was entered in 1980, the law relating to the United States' reversionary interest in abandoned railroad rights of way was contained in the Abandoned Railroad Right of Way Act, 43 U.S.C. §912. Under this statute, which was enacted in 1922, when a court has decreed abandonment of "a right of way," the interest of the United States is "transferred to and vested in **any person . . . to whom . . . title of the United States may have been . . . granted, conveying . . . the whole of the legal subdivision or subdivisions traversed by such railroad.**" 43 USC §912 (emphasis added). This is precisely the manner in which the title of the United States was granted under the patent issued for the Finnigan Property in 1922. *See* SUF ¶4.

As discussed above, and in *Avista,* the abandonment and relocation that occurred in the 1950s involved a 20-mile stretch of "a right of way" in order to accommodate the construction of two hydroelectric dams on the Clark Fork River.

This abandonment and relocation occurred as part of a single event of abandonment, not as a series of individual events of abandonment that applied to each of the individual owners within the abandoned stretch of right of way.

By its own words, §912 does not require a multiplicity of decrees of abandonment for each individual parcel within an abandoned right of way. Instead, there need be but one decree of abandonment of "a right of way." In this case, the 1950s abandonment traverses a number of "legal subdivisions," as shown by Exhibit 2. The *Bennett* decree, which was entered with the participation and consent of the United States, eliminated whatever right the United States may have had in the entire abandoned stretch of right of way that traversed not only the Bennett Property, but also the Finnigan Property and several other parcels of private property along the south bank of the Clark Fork River. This result of the effect of §912 was recognized by this Court in *Avista,* and has been recognized by other courts as well, including the Ninth Circuit. *See Avista,* 485 F.Supp.2d at 1181-82.

Finally, there can be no question that the Sanders County District Court is a court of competent jurisdiction within the meaning of §912. Under Montana law, the courts of Montana are authorized to enter decrees of quiet title. *See* MCA §70-28-101. As discussed in the next section of this brief, federal law requires federal courts to give full faith and credit to state court judgments. And, as stated above,

the United States expressly consented to the jurisdiction of the Sanders County

District Court to enter the decree of abandonment of the right of way in question.

### B.  The doctrine of preclusion yields the same result as the plain language of §912

This Court discussed the doctrine of issue preclusion, also known as

collateral estoppel, in *Jonas v. Jonas,* 2014 WL 978099 (D. Mont. Mar. 12, 2014).

As stated therein, under the federal full faith and credit statute, 28 U.S.C. §1738, a

federal court must give a state court judgment the same preclusive effect the

judgment would enjoy under the law of the state in which the judgment was

rendered.  *Jonas* at *20.

Under Montana law, a state court judgment bars any attempt to relitigate the

same issue if the following requirements are met:

1.   The issue decided in the prior adjudication is identical to the issue in this case.
2.   There was a final judgment on the merits in the prior litigation.
3.   The party against whom preclusion is asserted was a party in the prior adjudication.
4.   The party against whom preclusion is asserted was afforded a full and fair opportunity to litigate the issue as to which preclusion is asserted.

*Id.* at *21, *citing McDaniel v. State,* 208 P.3d 817, 825 (Mont. 2009).  Issue

preclusion applies not only to the legal conclusions of a prior judgment, but also to

any "determinative facts" actually or necessarily decided in the prior action.  *Id.*

*quoting Baltrusch v. Baltrusch,* 130 P.3d 1267, 1276 (Mont. 2006).

The policies that underline the doctrine of issue preclusion are well settled. The doctrine bars serial litigation of issues to avoid enmeshing both the parties and the courts "in tangles of duplicative litigation." *Jonas* at *22, *quoting Baltrusch,* 130 P.3d at 1275. This, in turn, serves to advance the judicial policy "that favors a definite end to litigation." *Jonas* at *20, *quoting Baltrusch,* 130 P.3d at 1273.

As to the "determinative fact" of the 1950s abandonment of the entire section of NPR right of way, *Bennett* is preclusive. The judgment and decree entered in *Bennett* was a final judgment that confirmed and decreed the 1950s abandonment. The United States was named as a party to *Bennett* – and was thereby afforded a full and fair opportunity to challenge the abandonment – and agreed that abandonment in fact occurred and, as a result, "the United States has no interest in this action." SUF ¶11.

The United States not only made an appearance in *Bennett*, it affirmatively disclaimed any interest in the Bennett Property and affirmatively represented that the reason for its disclaimer of interest was "that the lands involved in the [*Bennett* action] **are all privately owned** and the United States **has no interest in this action.**" SUF ¶11 (emphasis added). This admission was made in response to a complaint that expressly alleged that the lands involved in *Bennett* included NPR right of way that the NPR abandoned in the 1950s, by virtue of the relocation of its railroad track. SUF ¶¶10-11. As attested by the Declaration of Claude I. Burlingame, the attorney who represented Mr. Bennett, and as confirmed by the

decisions in *Avista,* the abandonment and relocation involved in *Bennett* is the same abandonment and relocation involved in this case and the *Avista* case. SUF ¶¶9-11.

By disclaiming any interest in *Bennett*, the United States consented to the entry of a judgment and decree by the Sanders County district court providing that "the allegations of the complaint" are true, including the allegations relating to the abandonment of the railroad right of way that traverses not only the Bennett Property, but also the Finnigan Property and the property involved in *Avista.* SUF ¶¶10-11. As shown by the map included as Exhibit 2 to Plaintiff's SUF, the Bennett Property is located at the south end of the stretch of railroad right of way that NPR abandoned in the 1950s. As a result, §912 provides that the decree confirming the 1950s abandonment transferred any interest of the United States to the private owners who held title to the land included within the abandoned right of way. This included not only the lands involved in *Bennett* but, under settled rules of issue preclusion, the Finnigan Property and all of the other privately held land previously occupied by the railroad right of way on the south bank of the Clark Fork River within the 20-mile section of right of way abandoned in the 1950s.

## C. 16 U.S.C. §1248(c) Does Not Change the Result Required by §912 and the Doctrine of Preclusion

In *Avista,* the Ninth Circuit stated that on remand this Court could consider the question of whether §912 "applies to declarations of abandonment issued after"

October 4, 1988, the effective date of 16 U.S.C. §1248(c). *Avista,* 549 F.3d at 1251, n.12. This issue had not been raised by the parties or considered by this Court. *Id.* However, the Ninth Circuit considered this issue to be a potential importance because under §1248(c) railroad rights of way abandoned after October 4, 1988 revert to the United States, not to the private landowners whose property is traversed by the abandoned right of way.

On remand this Court found it unnecessary to consider §1248(c), because the only issue to which it might be relevant is whether the United States may have a right of reverter, and no effort was being made in *Avista* to quiet title against the United States. *Avista,* 2009 WL 10694949 at *4.

In this case, the United States is a party and has placed in issue the applicability of §1248(c). *See* Dkt#12 at 3. However, it is clear from the language of §1248(c), from its legislative history, and from indisputable facts relating to *Bennett* and three later cases that §1248 provides no basis for a claim of reverter by the United States.

By its own terms, the right of reverter created by §1248(c) did not become law until its effective date of October 4, 1988. As the Ninth Circuit acknowledged in *Avista,* this was a "reverse course" of the rule under §912, which for six and one-half-decades had required reversion to private landowners of abandoned rights of way. *Avista,* 549 F.3d at 1243, n.2. For this reason, the Ninth Circuit held that §1248(c) applies only to "railroad rights of way abandoned after October 4, 1988."

*Id.* at 1251, n.12.  This holding is consistent with the legislative history of §1248(c), which states that the statue was intended to apply only to "future abandonments" of railroad rights of way.  *See* SUF ¶8.

Common sense dictates that the congressional decision to "reverse course" in 1988 on a policy followed since 1922 – with the reversal to apply only to future abandonments – cannot be applied in such a manner as to breathe new life into an interest of the United States that was transferred to private ownership under §912 before 1988.  This is particularly so for the entry of a court decree confirming abandonment of the right of way before 1988, with the consent and participation of the United States.  Common sense also dictates that confirmation of the abandonment in a case involving one part of an abandoned right of way applies to the entire abandoned right of way for the benefit of all private landowners affected by the abandonment.

Fortunately, the legislative history of §1248(c) endorses the commonsense solution in a manner that is consistent with the doctrine of preclusion and avoids complication, confusion, and disruption of land titles.  Thus, the Senate Report that accompanied passage of the Senate Bill that enacted §1248(c) states that for any abandonment confirmed by a court decree under §912, it was the understanding of Congress that "the federal interest in the right-of-way would become the property of **any adjacent landowner** whose own title was based on a federal conveyance . . . through which the right of way passed"  SUF ¶¶7-8.

The legislative history of §1248(c) is also consistent with the following undisputed facts regarding quiet title cases that have been adjudicated in the Sanders County district court since the abandonment was first decreed and confirmed in *Bennett*.  Again, notably, none of these cases were brought to this Court's attention or the attention of the Ninth Circuit in the *Avista* litigation.

### i. *Olson* Confirmed the Result in *Bennett*

In 1985, Richard and Mary Olson filed an action in Sanders County District Court to quiet title to land traversed by the same right of way involved in *Bennett* and in this case.  *Olson v. County of Sanders, et al*., No. DV-85-37 (Sanders Co., Mont. Oct. 13, 1987). The location of the Olson Property is shown on the map that is Exhibit 2 to Plaintiff's SUF.  The Olson Property is located approximately three miles to the southeast of the Finnigan Property.

Like the complaint in *Bennett*, the complaint in *Olson* alleged that in approximately 1954 the NPR abandoned the right of way in question.   SUF ¶13. The complaint also alleged that under §912 the right of way reverted to the Olsons. *Id.*  With the consent of the railroad, the district court entered a decree quieting title in favor of the Olsons.  SUF ¶14.

### ii. *Noxon Fire* also Confirms *Bennett*, Again with the Consent of the United States

In 1996, the Noxon Rural Fire District filed an action in Sanders County District Court to quiet title to a fire station located on property within the same

abandoned right of way.  SUF ¶15.  The Noxon Rural Fire Property is located between the Olson Property and the Finnigan Property.  *See* Exhibit 2 to Plaintiff's SUF.

The complaint in *Noxon Fire* alleged that as a result of the 1950s abandonment, the Fire District was the owner of the former railroad right of way under §912.  SUF ¶15.  As in *Bennett*, the United States was named as a defendant and stipulated that the Fire District "may take judgment as requested in the Complaint."  SUF ¶16.  The United States made no assertion that §1248(c) required a different result.

In accordance with the consent of the United States, the district court quieted titled in favor of the Fire District, stating that "the allegations of the Complaint are true."  SUF ¶17.

In consenting to the entry of judgment in *Noxon Fire*, the United States conclusively admitted, 8 years after §1248(c) was enacted, and in a manner consistent with *Bennett* and *Olson*, that title to the right of way in question for the 1950s abandonment had reverted to private ownership under §912.  That admission is as binding in this case as it was in *Noxon Fire*.

### iii.  *Finnigan* Again Confirms the Abandonment, with Specific Applicability to the Finnigan Property

In 1996, the same year as *Noxon Fire*, a quiet title case was filed in Sanders County district court to clear a cloud on the title to the Finnigan Property that

remained because of a 1958 deed issued by NPR to Sanders County for portions of the abandoned right of way and construction of a County road that traverses the Finnigan Property within the abandoned right of way. *Finnigan v. Burlington Northern Railroad Co.,* No. DV-96-46 (Sanders Co., Mont. Dec. 10, 1996); SUF ¶¶18-19. The complaint in *Finnigan* alleged Glowdena B. Finnigan's ownership of the abandoned right of way under §912. SUF ¶19. The issue regarding Sanders County was resolved by confirmation of the abandonment and an exchange of deeds by which the County quitclaimed the abandoned right of way to Glowdena B. Finnigan in exchange for title to a 60-foot easement for the existing County road that traverses the Finnigan Property. SUF ¶20. In *Finnigan*, Burlington Northern disclaimed any interest in the right of way and acknowledged that the right of way had been abandoned prior to October 1, 1958. *Id.*

In summary, §1248(c) is of no help to the United States. By its own terms, confirmed by its legislative history, and by admissions made by the United States in *Bennett* and *Noxon Fire*, title to all of the railroad right of way within the 1950s abandonment reverted to private ownership under §912.

## CONCLUSION

Since the 1950s abandonment, and until the dispute in this case began in 2017 – a period of nearly six decades – the United States has never occupied, used, or asserted any regulatory or administrative authority over the Finnigan Property. SUF ¶22. On the contrary, in two quiet title actions, one in 1980 and one in 1996,

the United States has consented to the entry of quiet title decrees confirming the abandonment and also confirming private ownership of the right of way under §912.

The 1980 decree in *Bennett* confirming the 1950s abandonment satisfied the requirement of §912 for reverter to private ownership of all of the railroad right of way included within the 1950s abandonment. This includes the portion of the abandoned right of way that traverses the Finnigan Property. The consent of the United States to the *Bennett* decree leads to the same result under the doctrine of issue preclusion. This result is also consistent with §1248(c), which was not intended to disrupt titles for reversion to private ownership involving right of way abandonments that had already been confirmed as required by §912. The United States acknowledged this in *Noxon Fire* – eight years after §1248(c) was enacted – when the United States consented to entry of a decree under §912 quieting title in the Noxon Fire District to a portion of the 1950s abandonment located approximately one mile southeast of the Finnigan Property. Finally, the *Avista* case does not compel a contrary result, because in that case none of the parties presented the prior history of judicial declarations and admissions by the United States regarding the 1950s abandonment, and the issue of reversion to the United States under §1248(c) was expressly reserved by this Court.

For the foregoing reasons, Plaintiff respectfully requests that the Court enter summary judgment in Plaintiff's favor, confirming what the United States admitted

in 1980: that the United States has no interest in the railroad right of way abandoned in the 1950s, including that portion of the right of way that traverses the Finnigan Property.

Because the United States has refused to disclaim its interest and forced the Finnigan Estate and its heirs to file this case, contrary to admissions made by the United States in two prior cases, federal law requires an award of attorney fees in Plaintiff's favor. *See* 28 U.S.C. §2412(d). The heirs of the Estate of Glowdena B. Finnigan should not be required to bear the expense of the duplicity of the United States in refusing to disclaim an ownership interest the United States clearly does not have over the former railroad right of way that traverses the Finnigan Property.

Dated this 20th day of January, 2019

/s/Timothy M. Bechtold

Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief is in 14-point font and contains 4963 words.

Pursuant to LR 7.1, a table of contents and table of authorities is provided for this brief.

/s/Timothy M. Bechtold

Attorneys for Plaintiff