IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ESTATE OF GLOWDENA B. FINNIGAN, | CV 18-109-M-DLC-JCL |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Before the Court is Plaintiff Estate of Glowdena Finnigan's ("Finnigan")

Fed. R. Civ. P. 56 motion for summary judgment. For the reasons stated, the Court

recommends the motion be denied.

## I.  Background

Finnigan is the successor in interest to Glowdena Finnigan who, at the time

of her death in 2014, owned real property ("Finnigan Property") located near

Noxon, Sanders County, Montana, as identified in Certificate of Survey 2316

attached to the complaint and recorded in Sanders County in 2002. (Doc. 1-1, Doc.

18 at ¶ 1.) Finnigan commenced this action against the United States seeking to

establish that Finnigan is the legal owner of the land underlying an abandoned

railroad right of way which crosses the Finnigan Property. To understand the

parties' arguments as to ownership of the subject right of way, a brief review of the

applicable law is necessary as that law has vacillated some over time.

In the mid-19th Century the United States Congress sought to encourage the expansion and settlement of what is now the western United States through the construction of cross-country railroads. *See Marvin M. Brandt Revocable Trust v. United States*, 572 U.S. 93, 95-96 (2014). So, Congress passed laws generously granting to railroad companies both (1) rights of way across the public domain, and (2) ownership of large tracts of public land. *Id*. at 96-97.

In 1864 Congress enacted the Northern Pacific Railroad Company Land Grant Act of 1864, 13 Stat. 365, ("1864 Act") which gave the Northern Pacific Railroad Company ("Northern Pacific") title to a right of way "extending 'two hundred feet in width on each side of" the railroad constructed by the Northern Pacific. *Avista Corporation Inc. v. Wolfe*, 549 F.3d 1239, 1242 (9th Cir. 2008). If the Northern Pacific later abandoned the right of way, then title to the right of way would revert to the United States because that title was originally granted "in the form of a 'limited fee, made on an implied condition of reverter in the event that the company ceased[…]'" to use the land for a railroad. *Id*. (quoting *N. Pac. Ry. Co. v. Townsend*, 190 U.S. 267, 271 (1903)).

But in 1922 Congress enacted the Abandoned Railroad Right of Way Act at 43 U.S.C. § 912 to redirect the transfer of "abandoned railroad lands to which the United States held a right of reverter under *Townsend*." *Avista Corporation*, 549 F.3d at 1243 (citation and quotations omitted). Section 912 requires abandoned rights of way be "given to the owners of the land traversed by the right of way." *Id*.

Then in 1988 Congress again "changed course and sought to retain title to abandoned […] railroad rights of way" when it enacted the National Trails System Improvements Act of 1988, Pub. L. No. 100-470, 102 Stat. 2281 (October 4, 1988), 16 U.S.C. §§ 1241-51 ("Rails to Trails Act"). *Marvin M. Brandt Revocable Trust v. United States*, 572 U.S. 93, 109 (2014). Thus, as of "October 4, 1988, […the United States' interest in abandoned] rights-of-way of the type described in [42 U.S.C. § 912], shall remain in the United States[.]" 16 U.S.C. § 1248(c).

With the foregoing brief review of the legal history in mind, the parties agree upon the following summary of the facts of this case:

In the 1880s the Northern Pacific constructed its railroad along the south side of the Clark Fork River near Noxon, Montana. That railroad passed through what is now the Finnigan Property.

On August 3, 1922, pursuant to the Homestead Act of 1862, the United States granted a land patent for the Finnigan Property to Finnigan's predecessor in interest. (Doc. 18 at 15.) The Northern Pacific railroad was in use at that time.

In the 1950s Washington Water Power Co. constructed two hydroelectric dams on the Clark Fork River: the Noxon Rapids Dam, and the Cabinet Gorge Dam. The impounded water from the dams flooded significant portions of the Northern Pacific railroad on the south side of the Clark Fork River. Consequently, Northern Pacific relocated its railroad to the north side of the Clark Fork River.

Northern Pacific's railroad relocation work occurred by late 1957, and it had ceased its physical use and occupancy of the railroad on the south side of the river by October 1, 1958. (Doc. 22 at ¶ 7.) *See Avista Corporation Inc.*, 549 F.3d at 1248-49. The parties agree that the approximately 20-mile segment of the Northern Pacific railroad from Trout Creek, Montana west to the Idaho border which the Northern Pacific ceased using as discussed in *Avista Corporation* is the same segment of railroad that traverses the Finnigan Property. (Doc. 22 at ¶¶ 9 & 15.) The Court will refer to it as the "20-Mile Segment".

In 1996, Glowdena Finnigan filed a civil action relative to the railroad right of way across the Finnigan Property. *See Glowdena Finnigan v. Burlington Northern Railroad Company and Sanders County*, DV 96-46, filed in the Montana Twentieth Judicial Court, Sanders County. (Doc. 18 at 114 of 134.) On December 10, 1996, that court entered a judgment and decree declaring that by October 1, 1958, the Northern Pacific abandoned the railroad right of way where it traverses the Finnigan Property. (Doc. 18 at 129-130 of 134.)

Because the 20-Mile Segment is no longer in use as a railroad, Finnigan commenced this action against the United States alleging that pursuant to 43 U.S.C. § 912, supra, Finnigan "now owns any portion of the former railroad Right of Way lying within the exterior boundaries of the [Finnigan] Property." (Doc. 1 at ¶ 19.) Finnigan alleges the "United States erroneously claims all right, title and interest in the abandoned [Northern Pacific] Right of Way within the [Finnigan]

Property." (Doc. 1 at ¶ 20.) Thus, Finnigan's complaint requests the Court enter a declaration establishing that: (1) in October, 1958, the Northern Pacific physically abandoned the right of way across the Finnigan Property, and (2) Finnigan "is the owner of the Right of Way, and [the United States] has no rights to or ownership of the Right of Way." (Doc. 1 at 7.)

The specific relief Finnigan requests in its summary judgment motion is more limited. It requests only that the Court enter a declaration "that the United States has no interest in the railroad right of way abandoned in the 1950s, including that portion of the right of way that traverses the Finnigan Property." (Doc. 17 at 23.) Finnigan's motion relies upon declarations of abandonment entered in other litigated cases concerning other parcels of land – not the Finnigan Property – at various points along the 20-Mile Segment.

## II.   Applicable Law – Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.   Discussion

### A.   Sovereign Immunity – Quiet Title Act

Because Finnigan is apparently pursuing this action under the Quiet Title Act at 28 U.S.C. § 2409a, the United States argues Finnigan's pleading does not properly invoke the applicable waiver of sovereign immunity to establish this Court's jurisdiction over this action and the action should be dismissed.[1]

The doctrine of sovereign immunity "shields the United States from suit absent a consent to be sued[, or waiver of sovereign immunity,] that is 'unequivocally expressed[,]'" generally in the text of a federal statute. *United States v. Bormes*, 568 U.S. 6, 9-10 (2012) (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992)). The United States' consent is a prerequisite for the court's jurisdiction over any suit against it. *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). There must exist a clear waiver of sovereign immunity, together with a claim falling within that waiver. *Jachetta*, 653 F.3d at 903 (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)).

The Quiet Title Act provides that "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to

---

[1]Although the United States did not present the issues of sovereign immunity and jurisdiction in a formal motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the Court will proceed to address the issues because the federal courts are obligated to independently examine their own jurisdiction. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

real property in which the United States claims an interest[.]" 28 U.S.C. §
2409a(a). It provides "the exclusive means by which adverse claimants [can]
challenge the United States' title to real property." *Block v. North Dakota ex rel.*
*Board of University and School Lands*, 461 U.S. 273, 275, 286 (1983).

The Quiet Title Act waives the United States' sovereign immunity provided
that certain conditions are strictly satisfied. *Block*, 461 U.S. at 275, 280 & 287.
Those conditions "define the extent of the court's jurisdiction." *United States v.*
*Mottaz*, 476 U.S. 834, 841 (1986).

### 1.   Interests Pled with Particularity

The Quiet Title Act requires that the real property at issue must be one "in
which the United States claims an interest[.]" 28 U.S.C. § 2409a(a). Specifically,

> [t]he complaint shall set forth with *particularity* the nature of the right, title,
> or interest which the plaintiff claims in the real property, the circumstances
> under which it was acquired, and the right, title, or interest claimed by the
> United States.

28 U.S.C. § 2409a(d) (emphasis added). *See Leisnoi, Inc. v. United States*, 170
F.3d 1188, 1191 (9th Cir. 1999) (recognizing sections 2409a(a) & (d) impose
conditions upon the waiver of sovereign immunity). The "particularity"
requirement in section 2409a(d) "necessitates a great deal of specificity."
*McMaster v. United States*, 731 F.3d 881, 897-898 (9th Cir. 2013).

Here the United States argues Finnigan's complaint fails to provide the
requisite particularity identifying the precise location of the former Northern
Pacific railroad right of way where it traverses the Finnigan Property.

But in response to the government's motion, Finnigan filed a declaration from Marc Carstens, the land surveyor who prepared Certificate of Survey 2316 attached to Finnigan's complaint. Carstens had located the original railroad bed where it crossed the Finnigan Property, and he clarifies that the legal description of the northern boundary of the Finnigan Property shown in the Certificate is also the northern boundary of the subject right of way. (Doc. 23-2 at ¶¶ 4-6; *See* Doc. 1-1 at 2 of 3.) Carstens asserts the southerly boundary of the right of way is parallel to, and 400 feet southerly of the northern right of way boundary.[2] (*Id*.) And Finnigan's pleading asserts it now owns the former Northern Pacific railroad right of way located within the Finnigan Property. (Doc. 1 at 6, ¶18, and at 7, ¶ 3.)

The United States is correct that absent allegations in a pleading which clearly identify the actual and precise location of a particular right of way at issue, the pleading fails to satisfy the degree of particularity required under 28 U.S.C. § 2409a(d). *See Board of Commissioners of Catron County, New Mexico v. United States*, 934 F. Supp. 2d 1298, 1307-08 (D. New Mexico 2013).

But here, Carstens' supplemental declaration referencing Certificate of Survey 2316 now provides a precise description of the location of the Northern Pacific railroad right of way where it traverses the Finnigan Property. (Doc. 23-2 at ¶¶ 4 & 6.) It provides the requisite "great deal of specificity", and it allowed the

---

[2]The United States has since prepared a map based on Carstens' declaration which identifies the location of the former Northern Pacific railroad right of way where it traverses the Finnigan Property. (Docs. 28-1 at 2, and 28-2.)

United States to prepare a map of the subject right of way. (Doc. 28-2.) And the Court would permit Finnigan to file an amended pleading to conform to the evidence as permitted under Fed. R. Civ. P. 15(b) so as "to secure the just, speedy, and inexpensive" resolution of this case. Fed. R. Civ. P. 1.

Despite Carstens' clarifications in his declaration, the United States still complains the Northern Pacific railroad right of way is not particularly described because both parties agree that "a significant portion of [the right of way] is submerged beneath the waters of [the] Cabinet Gorge Reservoir." (Doc. 23-2 at ¶ 6; *See also* Doc. 28-1 at ¶ 2.) The United States contends this fact raises a multitude of problems barring Finnigan's recovery under the Quiet Title Act as follows (doc. 28 at 8-11 of 25):

1.   The northern boundary of the Finnigan Property extends only the low water mark if the Clark Fork River is a navigable waterway, or to the river's mid-channel if it is a non-navigable waterway, but Finnigan has not provided any legal description of that exact northern boundary;

2. The balance of the submerged portion of the right of way in which Finnigan purportedly claims ownership is actually owned by either (1) the State of Montana if the right of way extends into the original riverbed, or (2) Avista as the successor in interest to Washington Water Power Co. who previously acquired real estate interests in the property flooded by the Cabinet Gorge Dam, thereby making those two entities necessary parties to this action;

3. The State of Montana and Avista's interests invalidate this Court's jurisdiction because the Quiet Title Act does not provide jurisdiction over an action where third parties claim an interest;

4. The State of Montana's Eleventh Amendment immunity requires that its interests can only be adjudicated in a court of the State of Montana, not this federal court; and

5. Because Avista may have a real property interest, Finnigan has failed to establish that title to *all* of the former right of way is vested in itself as is required to quiet title to real property under Montana law.

The Court finds the United States' concerns listed above to be unwarranted as the Court construes this action as limited in such a way that does not implicate the concerns. Since Finnigan acknowledges a portion of the northern side of the right of way is submerged under water, and it has chosen not to name either the State of Montana or Avista as a defendant in this action, the Court construes Finnigan's pleading as seeking only to quiet title to that portion of the right of way that is not submerged and to which only the United States claims an interest. Nothing in Finnigan's pleadings suggest it seeks to quiet title to the submerged land owned by any third party to this action. Finnigan's pleading refers only to the right of way within the Finnigan Property which is necessarily bounded by the obvious location of the waterway, and the precise legal description of that northerly boundary can be provided later.

Based on the foregoing, the Court concludes Finnigan has sufficiently invoked the waiver of sovereign immunity, and this Court's jurisdiction, as required by 28 U.S.C. § 2409a(d).

## 2.   Statute of Limitations

The United States contends Finnigan's quiet title claim is barred by the 12-year statute of limitations set forth in the Quiet Title Act which constitutes an

additional condition imposed upon the United States' waiver of sovereign immunity. *Block*, 461 U.S. at 287. The statute provides as follows:

> **(g)** Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. ¶ 2409a(g). This limitation is strictly construed in favor of the sovereign. *Shultz v. Department of Army, U.S.*, 886 F.2d 1157, 1159 (9th Cir. 1989).

The phrase "should have known" in section 2409a(g) imparts a test of reasonableness. *Shultz*, 886 F.2d at 1160. "The question is whether the United States' actions would have alerted a reasonable landowner that the government claimed an interest in the land[,]" and the statute of limitations is not triggered if the United States' claim is vague or ambiguous. *Id*. "All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's[,]" not knowledge of the full contours of the United States' claim. *Kingman Reef Atoll Investments, LLC v. United States*, 545 F. Supp. 2d. 1103, 1110-11 (D. Hawaii 2007) (citation and quotation omitted).

The United States first argues Finnigan's predecessor, Glowdena Finnigan, reasonably should have known of the United States' claim to the Northern Pacific right of way on the Finnigan Property by 1988 when Congress enacted the Rails to Trails Act because the Act operated to transfer title to the United States. 16 U.S.C. § 1248(c). And if a right of way is located within the boundaries of a National

Forest, then it must be incorporated into that Forest and managed pursuant to federal laws applicable to National Forest lands. 16 U.S.C. § 1248(d)(1).

In this case, the Finnigan Property is located within the boundaries of a National Forest. (Doc. 21-6.) Therefore, the United States argues the 1988 Rails to Trails Act should have given Glowdena Finnigan reasonable notice of the government's reversionary interest in the former railroad right of way, and the 12-year statute of limitations expired in 2000. The Court disagrees.

The United States does not cite to any legal authority establishing that an act of Congress, by itself, is deemed sufficient to alert a reasonable private landowner that the United States claims an interest in the landowner's property. *But see Fidelity Exploration and Production Company v. United States*, 506 F.3d 1182, 1186 (9th Cir. 2007) (noting the plaintiff did not dispute that an act of Congress should have given plaintiff's predecessor-in-interest notice of a claim of the United States). The mere enactment of the Rails to Trails Act could not have given a reasonable private landowner notice of how its provisions would apply to a specific parcel of land, or that the United States would actually claim an interest in any specific parcel of land by virtue of the Act. Furthermore, the United States has not presented evidentiary material suggesting Finnigan, or its predecessors, had actual notice of either the Rails to Trails Act, or its affect on the Northern Pacific railroad right of way where it traverses the Finnigan Property.

Additionally, Finnigan notes that the Northern Pacific ceased its use and occupancy of the Northern Pacific railroad right of way by October 1, 1958, and the legislative history supporting the Rails to Trails Act indicates it applies only "in the event of *future* abandonments of railroad rights-of-way[,]" i.e. abandonments that occurred after "October 4, 1988[.]" 16 U.S.C. § 1248(c); (Doc. 18 at 55 of 134 (emphasis added).) Therefore, the Rails to Trails Act is, at best, ambiguous as to whether it applies to the discontinued use of a railroad that occurred prior to October 4, 1988, and cannot not trigger the Quiet Title Act's statute of limitations. *See infra* at page 30 (describing the ambiguity); and *Shultz*, 886 F.2d at 1160.

Additionally, legal precedence in the Ninth Circuit existing at least as early as 1990 confirmed that a judicial decree of abandonment could be imposed retroactively to the date of the cessation of use and occupancy deeming the abandonment to have occurred prior to the enactment of the Rails to Trails Act, and not subject to the Act. *See Avista Corp. v. Sanders County*, 485 F. Supp. 2d 1176, 1185-87 (D. Mont. 2007) (citing *Vieux v. East Bay Regional Park District*, 906 F.2d 1330, 1337 (9th Cir. 1990)), reversed by *Avista Corporation Inc. v. Wolfe*, 549 F.3d 1239, 1248-49 (9th Cir. 2008). Although *Avista Corporation Inc. v. Wolfe* reversed the retroactivity holding in *Avista Corp.*, that reversal did not occur until 2008. Therefore, Finnigan's predecessors could not reasonably have known until 2008 that a decree of abandonment of a railroad would not be retroactively

imposed and that the Rails to Trails Act might apply to a railroad right of way abandoned prior to its enactment.

The United States next argues that Finnigan's predecessors should have known of the United States' claim to the Northern Pacific railroad right of way due to the quiet title action Glowdena Finnigan filed in May, 1996, relative to that right of way. *Glowdena Finnigan v. Burlington Northern Railroad Company and Sanders County*, DV 96-46, filed in the Montana Twentieth Judicial Court, Sanders County. (Doc. 18 at 114 of 134.) The United States contends that attorneys who are familiar with quiet title actions were then aware that the actions required the United States be involved. The United States cites to the deposition testimony of attorney Claude Burlingame provided in *Avista Corporation v. Sanders County*, CV 05-201-M-JCL, in which he acknowledged his standard practice in handling quiet title actions concerning railroad rights of way included a consideration of whether the United States might have an interest in the right of way. (Doc. 21-5 at 6-7 of 56.) Therefore, the United States argues that because of Burlingame's asserted knowledge, Finnigan's predecessors should have known by 1996 of the United States' claim to the railroad right of way at issue in this case. But for the reasons discussed, the purported logic of the United States' argument fails.[3]

---

[3]Burlingame has since clarified that he actually "did not believe the federal government had an interest in" railroads abandoned prior to the Rails to Trails Act. (Doc. 23-1 at ¶ 7.a.) And although the United States argues extensively as to what Burlingame may have actually believed or understood in 1996 (doc. 28 at 13-16 of 25), it has failed to demonstrate how that understanding is attributed to Finnigan.

The United States has wholly failed to explain how Finnigan or its predecessors should have known what Burlingame may have understood in 1996. Burlingame did not represent Glowdena Finnigan in the 1996 *Glowdena Finnigan* action. Instead, she was represented by attorney John Sullivan. (Doc. 23-3 at ¶ 7.) And Sullivan states that in 1996 he did not need to include the United States in the action because its interest in the right of way would have transferred to Glowdena Finnigan by virtue of the 1922 land patent issued to Finnigan's predecessor in interest to the Finnigan Property. (Doc. 23-3 at ¶ 8.)

More importantly, the United States has not demonstrated that Finnigan's predecessors knew, or had any legal contact with Burlingame around 1996. The United States neither advances an argument explaining, nor presents evidentiary material suggesting that Burlingame's purported understanding in 1996 of the United States' interests in railroad rights of way is attributable to Finnigan or its predecessors in interest. Instead, the record suggests that Finnigan's first contact with Burlingame was when he became the attorney responsible for probating the Estate of Glowdena Finnigan after her death in 2014. (Doc. 18 at 71 of 134.)

Finally, the United States suggests Finnigan's predecessors should have known of the United States' possible interest in former railroad rights of way because by 1993 real estate title insurance companies were aware of such possible interests under the Rails to Trails Act. (*See* Doc. 21 at 19 of 35; Doc. 21-5 at 49 of 56; and Doc. 23-1 at ¶ 7.a. (noting that title insurance underwriters insisted the

United States be a party to quiet title actions).) But again, the United States has not identified evidentiary material suggesting Finnigan or its predecessors knew, or should have known that which the title insurance companies believed regarding the United States' possible interests in railroad rights of way. Nothing suggests the insurance companies' knowledge is attributable to Finnigan's predecessors.

Based on the foregoing, the Court finds no evidentiary material in the record relative to Glowdena Finnigan's 1996 quiet title action, or the title insurance companies' knowledge, suggesting Finnigan's predecessor actually knew, or should have known that the United States claimed an interest in the Northern Pacific railroad right of way traversing the Finnigan Property. Thus, the United States' assertion of the 12-year statute of limitation lacks merit.

To the contrary, because Burlingame believed the United States held no interest in the 20-Mile Segment abandoned in 1958 (doc. 23-1 at ¶ 7.a.), it was not until November, 2017, that Burlingame first learned that the United States refused to disclaim its interest, and instead asserted its interest in the railroad right of way where it traverses the Finnigan Property. (Doc. 23-1 at ¶ 4.) Thus, the evidence suggests Finnigan's claim under the Quiet Title Action may not have accrued until November, 2017, well within the 12-year statute of limitations satisfied by Finnigan's commencement of this action on June 13, 2018. (Doc. 1.)

## B. Transfer of Interest in the Northern Pacific Railroad Right of Way Following Abandonment

As noted, there exist two potentially competing statutes which address the disposition of title to the land underlying an abandoned railroad right of way: (1) the 1922 Abandoned Railroad Right of Way Act at 43 U.S.C. § 912, and (2) the Rails to Trails Act at 16 U.S.C. § 1248(c) & (d)(1).

The relevant provision of 43 U.S.C. § 912 is as follows:

> Whenever public lands of the United States have been or may be granted to any railroad company for use as a right of way for its railroad or as sites for railroad structures of any kind, and use and occupancy of said lands for such purposes has ceased or shall hereafter cease, whether by forfeiture or by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon all right, title, interest, and estate of the United States in said lands shall […] be transferred to and vested in any person, firm, or corporation, assigns, or successors in title and interest to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision or subdivisions traversed or occupied by such railroad or railroad structures of any kind as aforesaid, […] and this by virtue of the patent thereto and without the necessity of any other or further conveyance or assurance of any kind or nature whatsoever[.]

43 U.S.C. § 912 (omitting exceptions not applicable in this action). This statute "requires that public lands given by the United States for use as railroad rights of way […] be given to the owners of the land traversed by the right of way." *Avista Corporation Inc.*, 549 F.3d at 1243.

For a reversionary interest in the land underlying the railroad right of way to vest in the owner of the land traversed by the right of way, section 912 requires that "the railroad must 1) cease 'use and occupancy' of the rights of way *and* 2)

abandonment must be 'declared or decreed' by a court of competent jurisdiction or a congressional act." *Avista Corp.*, 485 F. Supp. 2d at 1182 (emphasis in original) (quoting *Vieux v. East Bay Regional Park District*, 906 F.2d 1330, 1337 (9th Cir. 1990)). *See also Avista Corporation*, 549 F.3d at 1246-47 (repeating the same requirements). Once the two conditions or events occur, then "[a]ll right/title/interest of the United States in such lands shall be transferred to and vested in any person or entity to whom the United States has granted title by a conveyance purporting to convey lands traversed" by the railroad right of way. *Avista Corporation*, 549 F.3d at 1246 & 1247.

The Ninth Circuit has declared that the date of the decree of abandonment issued under the second prong of section 912 is the date a landowner's title to the land underlying the right of way is vested. *Avista Corporation*, 549 F.3d at 1252. Prior to that date the railroad company's cessation of use and occupancy gives rise to only a non-vested, inchoate reversionary right held by the landowner. *Id*. at 1247. That non-vested right only vests upon the entry of a decree of abandonment. *Id*. (referring to "the *vested* reversionary rights that arose after the declaration"). And that interest cannot be declared as vested retroactive to the date of the railroad's actual cessation of use and occupancy of the right of way. *Id*. at 1250-51.

Then in 1988, the Rails to Trails Act declared the United States will retain the interest in the land underlying an abandoned railroad right of way as follows:

> [c]ommencing October 4, 1988, any and all right, title, interest, and estate of the United States in all rights-of-way of the type described in section 912 of

Title 43, shall remain in the United States upon the abandonment or forfeiture of such rights-of-way, or portions thereof, except to the extent that any such right-of-way, or portion thereof, is embraced within a public highway no later than one year after a determination of abandonment or forfeiture, as provided under such section.

16 U.S.C. § 1248(c).

The fundamental dispute between the parties in this case is whether the "abandonment" of the Northern Pacific railroad right of way where it traverses the Finnigan Property falls within 43 U.S.C. § 912 transferring title to Finnigan, or within the Rails to Trails Act at 16 U.S.C. § 1248(c) potentially transferring title to the United States. Finnigan's motion, of course, is advanced pursuant to section 912. But for the reasons discussed, the Court concludes the abandonment at issue in this case does not fall within section 912.[4]

### 1. Prior Decrees of Abandonment Entered as to Other Properties

Finnigan's motion for summary judgment focuses on the second prong of section 912 requiring that the "abandonment must be 'declared or decreed' by a court of competent jurisdiction[.]" *Avista Corp.*, 485 F. Supp. 2d at 1182. Finnigan argues that various court decrees of abandonment previously issued relative to the former Northern Pacific railroad right of way at different points along the 20-Mile Segment where it traversed specific parcels of land other than the Finnigan

---

[4]The United States has not filed a counterclaim in this action, and it has not requested that the Court declare that the abandoned railroad right of way at issue in this case actually transferred to the United States under the provisions of the Rails to Trails Act. Therefore, the Court's decision herein is limited to only the question of whether the abandonment falls within section 912.

Property are sufficient to satisfy the second requirement under section 912 to transfer title to the right of way across the Finnigan Property to Finnigan.

Finnigan first relies upon the declaration of abandonment issued in *Avista Corp. v. Sanders County*, 485 F. Supp. 2d 1176 (D. Mont. 2007). In *Avista Corp.* this Court found the Northern Pacific ceased its use and occupancy of the 20-Mile Segment by October, 1958, and entered its declaration of abandonment under section 912 with respect to the specific parcel of land at issue in that case. *Avista Corp.*, 485 F. Supp. 2d at 1185-86, affirmed by *Avista Corporation*, 549 F.3d at 1249. Finnigan suggests the declaration of abandonment in *Avista Corp.* confirmed that the 1958 abandonment "was a singular event of abandonment" of the entire 20-Mile Segment of the former right of way which event applies to any parcel of land along the 20-Mile Segment. (Doc. 17 at 5, 7 & 13.) But Finnigan is incorrect.

The referenced finding in *Avista Corp.* was a factual finding only as to the cessation of use and occupancy under the first prong of section 912. This Court found only that the "Northern Pacific had ceased its use and occupancy of [… the 20-Mile Segment] by the Fall of October 1958." *Avista Corp.*, 485 F. Supp. 2d at 1183 & 1185. Contrary to Finnigan's suggestion, that factual finding under the first prong of section 912 does not constitute a singular "decree" of abandonment applicable to any and all parcels of land traversed by the 20-Mile Segment as is legally necessary to satisfy the separate second prong of section 912. There is no statement or discussion in the *Avista Corp.* decision that supports Finnigan's

20

suggestion. Instead, the specific decree of abandonment issued in *Avista Corp.* under the second prong of section 912 was only as to the individual landowners as successors in interest to the specific real property involved in that action which was "traversed by the railroad." *Id.* at 1186. That decree of abandonment was not issued as to any other parcel of land along the 20-Mile Segment.

Finnigan further suggests the 2007 *Avista Corp.* decision supports its argument for the application of section 912 to a parcel of land after the date of the Rails to Trails Act. Finnigan believes the decision confirms the Rails to Trials Act applies only to "future abandonments," i.e. only cessations of use and occupancy that occur after October 4, 1988, not to future decrees of abandonment entered relative to cessations of use and occupancy that occurred prior to October 4, 1988.

But Finnigan's reliance upon *Avista Corp.* as constituting a decision applying section 912, and not the Rails to Trails Act, is not justified. It is undisputed that the Rails to Trails Act "was not raised by the parties, nor considered by the district court" in *Avista Corp. Avista Corporation*, 549 F.3d at 1251 n.12. The United States' potential interest in the specific section of abandoned right of way at issue in *Avista Corp.* was not litigated in the case because the United States was not a party to the case. Thus, *Avista Corp.* cannot be extended to stand for the specific proposition suggested by Finnigan.

Finnigan relies upon other civil actions which resulted in a judicial declaration of abandonment as to the former Northern Pacific railroad right of way

where it traversed the real property at issue in those other actions. For reference, the parties have each filed a map depicting the relevant location of the individual parcels of land along the 20-Mile Segment involved in each of the other civil actions. (*See* Doc. 18 at 17 of 134, and Doc. 26-1.)

In 1980 David Bennett commenced a civil action against the United States and others relative to a specific parcel of land traversed by the former Northern Pacific railroad right of way along the 20-Mile Segment. *See Bennett v. United States, et al.*, Cause No. 6262, filed in the Montana Fourth Judicial District Court, Sanders County. (Doc. 18 at 61-62 of 134.) That complaint alleged Bennett's real property "includes" the right of way granted to the Northern Pacific, but that by 1954 the Northern Pacific "abandoned the right-of-way affecting the above-described real property[]" at issue in the case. (Doc. 18 at 62 of 134, ¶ IV.) The United States filed a document disclaiming any interest in "the lands involved in the above action[.]" (Doc. 18 at 74 of 134.) Consequently, the court issued its decree in 1980 confirming the referenced allegations of the complaint as true, and that Bennett held title to the property at issue in *Bennett*. (Doc. 18 at 76-78 of 134.)

Finnigan argues the *Bennett* decree applies to the Finnigan Property because 43 U.S.C. § 912 does not require multiple "decrees of abandonment for each individual parcel within an abandoned right of way." (Doc. 17 at 13.) Thus, Finnigan argues that the 1980 *Bennett* decree triggered the provisions of section 912 thereby transferring all right of way reversionary interests potentially held by

22

the United States to all "of the individual owners within" the 20-Mile Segment. (Doc. 17 at 12-13.) Finnigan asserts that the *Bennett* decree and the United States' disclaimer eliminated all of the United States' interest in the entire abandoned 20-Mile Segment with respect to all parcels of land traversed by the former Northern Pacific railroad right of way, including the Finnigan Property. (*Id*.)

Finnigan relies in part upon what it deems the "plain language" of section 912 referring to multiple legal "subdivisions" of land. Specifically, section 912 provides that all right, title and interest in the right of way "shall […] be transferred to and vested in any person […] to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision or *subdivisions* traversed or occupied by such railroad[.]" 43 U.S.C. § 912 (emphasis added). Based on this language, Finnigan suggests section 912 effects a transfer of title to all owners of the multiple "subdivisions" of land traversed by the railroad right of way once a single judicial decree of abandonment is issued relative to any parcel of land along the entire single stretch of abandoned railroad right of way. The Court disagrees.

The quoted language of section 912 provides for the transfer of title to a single "person" to whom the United States had previously conveyed a subdivision, or multiple "subdivisions" of real estate. Thus, properly read, the language contemplates that a single original transferee may have received multiple subdivisions of land from the United States, and that the abandoned railroad right

of way may have traversed those multiple subdivisions. The statute does not describe multiple persons or transferees, plural, to whom the United States previously conveyed title to multiple "subdivisions" of real estate along the full-length of the railroad right of way that is now abandoned. Thus, the plain language of section 912 does not support Finnigan's theory.

Finnigan's reliance on *Bennett* as a decree of abandonment for all parcels along the 20-Mile Segment is also improper because the language of the decree is not that broad. As noted, the language in the complaint, the United States' disclaimer of interest, and the decree filed in *Bennett* is limited as applying to the abandoned right of way only where it crosses the specific parcel of land at issue in *Bennett*, not any other parcel of land along the 20-Mile Segment. And Finnigan concedes that the Finnigan Property is geographically distinct from the property involved in *Bennett*. (Doc. 23 at 10 of 15.)

Next, in 1985 Richard and Mary Olson commenced a civil action against Sanders County and others in *Olson v. County of Sanders, et al.*, Cause No. DV 85-37, filed in the Twentieth Judicial District, Sanders County. (Doc. 18 at 80 of 134.) The Olsons' complaint requested a decree of abandonment relative to a short portion of the 20-Mile Segment of the Northern Pacific right of way "over the property" at issue in *Olson*. (Doc. 18 at 81 of 134 at ¶ 4.) The Olsons alleged the Northern Pacific abandoned the right of way over that specific property in

approximately 1954, and title to the right of way transferred to them pursuant to 43 U.S.C. § 912. (*Id*.)

In 1987, the court issued a decree in *Olson* confirming the referenced allegations of the complaint were true, and that the Olsons owned title to the specific parcel of real property identified in the complaint by operation of 43 U.S.C. § 912. (Doc. 18 at 81, 85-87 of 134.)

Finnigan argues that the decision in *Olson* confirms the decision in *Bennett*, and supports Finnigan's theory that the decree in *Bennett* operates as a decree of abandonment as to any parcel of land along the 20-Mile Segment. But the Court finds Finnigan's reliance upon *Olson* is misplaced for essentially the same reasons discussed as to Finnigan's reliance upon *Bennett*. The decision in *Olson* did not rely upon the *Bennett* decree, and the decree entered in *Olson* was issued only as to the specific parcel of land at issue in *Olson*, not the Finnigan Property.

## 2. Collateral Estoppel or Issue Preclusion

Finnigan argues the doctrine of collateral estoppel or issue preclusion operates to bar the United States from challenging the factual or legal determination of "abandonment" of the 20-Mile Segment as established in *Bennett*. The argument is misplaced.

It is well-established that pursuant to federal law at 28 U.S.C. § 1738 a federal court must give a state court judgment the same preclusive effect that the judgment would be given by the courts of the State in which the judgment was

25

rendered. *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Thus, federal courts apply the law of claim or issue preclusion as adopted by the State from which the subject judgment emerged. *Adam Bros. Farming, Inc. v. County of Santa Barbara*, 604 F.3d 1142, 1148 (9th Cir. 2010).

In Montana, the doctrine of "[i]ssue preclusion bars a party from reopening an issue that was litigated and determined in a prior suit." *McDaniel v. State*, 208 P.3d 817, 825 (Mont. 2009) (citation omitted). The doctrine applies after satisfaction of the following factors:

> 1. Was the issue decided in the prior adjudication identical to the issue raised in the action in question?
>
> 2. Was there a final judgment on the merits in the prior adjudication?
>
> 3. Was the party against whom preclusion is now asserted a party or in privity with a party to the prior adjudication?
>
> 4. Was the party against whom preclusion is now asserted afforded a full and fair opportunity to litigate the issue which may be barred?

*McDaniel*, 208 P.3d at 825-26.

Finnigan argues that the decree issued in *Bennett*, together with the United States' disclaimer of interest filed in *Bennett*, preclude the United States from relitigating the determinative fact of the 1950s abandonment of the entire 20-Mile Segment as established in *Bennett*. Again, Finnigan argues that the *Bennett* decree satisfied both requirements of section 912 as to all the private land owners who held title to land underlying the 20-Mile Segment. (Doc. 17 at 16.)

But Finnigan's argument and reliance upon the doctrine of issue preclusion improperly merges the two independent requirements for transfer of title under section 912. The parties do not dispute that the Northern Pacific "ceased its use and occupancy" of the railroad right of way along the entire 20-Mile Segment of the right of way at least by 1958. But that "determinative fact" is distinct from the second prong of section 912 requiring the entry of a judicial decree of abandonment. The decree of abandonment in *Bennett* was issued only as to the right of way where it traverses the specific parcel of land at issue in *Bennett*. (Doc. 18 at 76-78 of 134.) And the United States' disclaimer of interest was filed only as to the specific parcel of land involved in the *Bennett* action. (Doc. 18 at 74 of 134.) Therefore, the *Bennett* decree did not decide the same issue as to the legal abandonment of the right of way where it traverses the Finnigan Property as required under the second prong of section 912. Therefore, the doctrine of issue preclusion does not bar the United States from litigating the second prong of section 912 as it pertains to the Finnigan Property.

### 3. Rails to Trails Act

Finnigan argues that the Rails to Trails Act does not change the result dictated by section 912 transferring title to the right of way to Finnigan. It asserts the 1988 Act only applies to "railroad rights of way abandoned after October 4, 1988[,]" and directs the reversion of only those abandoned right of way interests to

27

the United States. *See Avista Corporation Inc. v. Wolfe*, 549 F.3d 1239, 1243 n.2 (9th Cir. 2008).

### a. <u>Legislative History</u>

Finnigan relies upon legislative history in Senate Report No. 100-408 stating that the Rails to Trails Act's provision at 16 U.S.C. § 1248(c) applies "in the event of future abandonments of railroad rights-of-way[.]" (Doc. 18 at 55 of 134.) But the Court finds this quote is ambiguous as it does not clarify whether it refers only to future factual abandonments, i.e. cessations of use and occupancy, or whether it also refers to future judicial decrees of abandonment.

Finnigan further suggests that the same Senate Report confirms that pursuant to 43 U.S.C. § 912, "upon an abandonment confirmed by court decree or Act of Congress, the federal interest in the right-of-way would become the property of an adjacent landowner whose own title was based on a federal conveyance[.]" (Doc. 18 at 54 of 134.) Thus, Finnigan suggest the Senate Report confirms that such transfer under section 912 would occur despite the enactment of the Rails to Trails Act. But the Court finds that this quoted portion of the Senate Report was merely a recitation of the history of prior applicable Congressional Acts, and it clearly does not actually confirm that section 912 applies to a decree of abandonment issued after the date of the Rails to Trails Act. (*See* Doc. 18 at 53-54 of 134.)

### b.  <u>No Divestment of Previously Vested Title</u>

Finnigan further argues that a common-sense application of 16 U.S.C. § 1248(c) affects only those actual abandonments that occur after 1988. It argues that section 1248(c) logically cannot operate to subsequently transfer to the United States title to a railroad right of way that had previously transferred to a private landowner by operation of 43 U.S.C. § 912. In other words, Finnigan argues section 1248(c) cannot operate to divest the interest of a landowner previously vested under section 912.

But Finnigan's concern that section 1248(c) would divest a previously vested right is illogical. As discussed, the "non-vested interest" of an owner of the land underlying the railroad right of way becomes a vested title under section 912 when a decree of abandonment is issued. *Avista Corporation Inc. v. Wolfe*, 549 F.3d 1239, 1247 & 1252 (9th Cir. 2008). And there is nothing within the language of section 1248(c) that operates to divest an interest that became vested under section 912 prior to the Rails to Trails Act. Thus, the common-sense application of section 912 and section 1248(c) compels a conclusion that in cases where section 1248(c) effects a transfer of title to the United States, it could only do so through the transfer of a non-vested interest that existed where no decree of abandonment is entered under section 912 prior to the Rails to Trails Act.

### c.  Litigation in *Noxon Fire*

Finnigan also relies upon a quiet title action that the Noxon Rural Fire District commenced against the United States and others after the Rails to Trails Act in *Noxon Rural Fire District v. United States, et al.*, Cause No. 96-06, filed in the Montana Twentieth Judicial District, Sanders County. (Doc. 18 at 89 of 134.) In that case the Fire District sought to quiet title in its name as to a specific parcel of land identified in the complaint. (Doc. 18 at 90 of 134, ¶ 3 (referring to the abandonment of "the railway right of way and railroad tracks" across the specific parcel of land at issue in *Noxon Fire*).) The Fire District alleged that in the 1950s the Northern Pacific abandoned the railroad right of way where it traversed the real property described in *Noxon Fire*, and that by operation of 43 U.S.C. § 912 the land underlying the right of way transferred to the Fire District. (Doc. 18 at 91 of 134.)

In *Noxon Fire*, the United States filed a stipulation agreeing that judgment could be entered in favor of the Fire District allowing it to take title to the specific parcel of real property at issue in the case. (Doc. 18 at 96 of 134.)

On November 12, 1996, the district court entered judgment in *Noxon Fire* in favor of the Fire District. (Doc. 18 at 98 of 134.) The judgment and decree confirmed as true the referenced allegations in the complaint, and that title to the specific parcel at issue was vested in the Fire District. (Doc. 18 at 100 of 134.)

30

Finnigan contends the facts and circumstances of the 1996 *Noxon Fire* decree support its theory that section 912 is triggered by a decree of abandonment entered after the enactment of the Rails to Trails Act. And Finnigan argues the United States' stipulation in *Noxon Fire* confirms its admission that title to a railroad right of way abandoned in the 1950s, under a decree of abandoned entered after the date of the Rails to Trails Act, transfers to the underlying land owner pursuant to section 912, and not the Rails to Trails Act provisions at 16 U.S.C. § 1248(c) & (d). (Doc. 17 at 20.)

The Court does not agree that the decision in *Noxon Fire* advances the broad holding Finnigan suggests. Although the United States was a party to the *Noxon Fire* case, its stipulation necessarily indicates it elected, in that case, not to assert the provisions of the Rails to Trails Act at 16 U.S.C. § 1248(c). And the Rails to Trails Act was not at issue in *Noxon Fire*.

Finnigan again argues the United States' stipulation entered in *Noxon Fire* constitutes an admission that the entire 20-Mile Segment of the former Northern Pacific railroad right of way had been abandoned with respect to all other parcels of land traversed by the former right of way, including the Finnigan Property. But clearly the stipulation is not so broadly written. The language in the complaint, stipulation, and decree is directed at the abandonment of the right of way only where it traversed the specific property at issue in *Noxon Fire*, not any other parcel

of land. And again, Finnigan concedes that the Finnigan Property is geographically distinct from the property involved in *Noxon Fire*. (Doc. 23 at 10 of 15.)

### d.  <u>No Material Misstatement in *Avista Corporation*</u>

In view of the decisions in *Bennett*, *Olson*, and *Noxon Fire*, Finnigan challenges what he asserts is a materially inaccurate statement made in *Avista Corporation*. There the Ninth Circuit stated that the district court's entry of its decree of abandonment in 2007 as to the specific parcel of real property at issue in that case "constituted a declaration of abandonment issued by a court of competent jurisdiction, as contemplated by § 912." *Avista Corporation Inc. v. Wolfe*, 549 F.3d 1239, 1249 (9th Cir. 2008). And the Ninth Circuit indicated it was the first applicable declaration stating that "prior to the district court's [2007] declaration of abandonment, neither Congress nor a court of competent jurisdiction had acted." *Id*. And the date of the 2007 declaration had controlling significance with respect to the result of the court's decision under section 912.

Finnigan challenges the specific statement in *Avista Corporation* relative to the absence of prior declarations of abandonment. Finnigan suggests that the Ninth Circuit simply had not been made aware of the prior declarations issued in *Bennett*, *Olson*, and *Noxon Fire*. Finnigan contends that if the prior cases had been brought to the Ninth Circuit's attention, then it would have applied those declarations to the property at issue in *Avista Corporation*.

Finnigan also argues the asserted mistaken factual finding erroneously caused the Ninth Circuit to state the following in a footnote: "[T]here is a question about whether § 912 applies to declarations of abandonment issued after the effective date of the" Rails to Trails Act, and the district court could address "other implications" of the Act upon remand. *Avista Corporation*, 549 F.3d at 1251 n.12. Finnigan suggests that if the Ninth Circuit had been aware of the *Bennett* and *Olson* decrees, there would not have been any remaining question because the dates of those decrees would have been applicable to the property involved in *Avista Corporation*.

The Court does not agree, and the record herein does not clearly establish, that the Ninth Circuit made a material misstatement as to the absence of a prior declaration. Given the full context of the discussion in *Avista Corporation*, the Ninth Circuit's statement is reasonably read to assert only that no prior declaration of abandonment had been issued by a court of competent jurisdiction with respect to the specific parcel of land at issue in *Avista Corporation*.[5]

Alternatively, even assuming Finnigan is correct in that the Ninth Circuit had not been made aware of earlier decrees of abandonment, nothing within the decision in *Avista Corporation*, or within other applicable provisions of federal

---

[5]The United States argues the Ninth Circuit's statement in *Avista Corporation* confirms that the decisions in *Bennett*, *Olson*, and *Noxon Fire* cannot be employed as declarations that are applicable to the Finnigan Property sufficient to transfer title to Finnigan under section 912. (Doc. 21 at 27 of 35, and Doc. 28 at 19 of 25.) But the Court does not rely upon *Avista Corporation* for that proposition.

law, suggests that if the Ninth Circuit had been aware of the prior cases it would have deemed those other decrees relevant and applicable to the distinct property at issue in *Avista Corporation*. Finnigan's suggestion to the contrary is speculative.

Furthermore, despite the Ninth Circuit's reference to further consideration of the Rails to Trails Act upon remand, the parties agree that such further consideration never occurred in the subsequent proceedings in the *Avista* case. Thus, the footnote in *Avista Corporation* is, at best, dicta that does not provide a controlling decision as to the legal issue involved in this case.

### e.  Litigation in *Glowdena Finnigan*

Finally, Finnigan again relies upon the facts and circumstances of the *Glowdena Finnigan* action prosecuted against Sanders County in 1996. (Doc. 18 at 114 of 134.) The complaint in *Glowdena Finnigan* referenced the Northern Pacific railroad right of way across a portion of the Finnigan Property, and it alleged that the Northern Pacific "abandoned the right of way across the" Finnigan Property around October 1, 1958. (Doc. 18 at 116 of 134, ¶ III.) The complaint further alleged that Glowdena Finnigan became the owner of the land underlying the former right of way by operation of 43 U.S.C. § 912. (*Id*. at ¶ IV.) And the Burlington Northern Railroad Company, as the successor in interest to the Northern Pacific, filed a disclaimer of interest agreeing that the railroad right of way where it traverses the Finnigan Property was abandoned by October 1, 1958. (Doc. 18 at 119 of 134.)

In *Glowdena Finnigan* the court entered a judgment and decree on December 10, 1996, declaring that by October 1, 1958, the Northern Pacific abandoned the railroad right of way where it traversed the Finnigan Property. (Doc. 18 at 129-130 of 134.) Therefore, Finnigan argues the decree in *Glowdena Finnigan* declared that the abandonment of the right of way occurred by October 1, 1958, and confirmed that 43 U.S.C. § 912, and not the Rails to Trails Act, applies to a decree issued after the enactment of the Rails to Trails Act relative to the cessation of use and occupancy that occurred prior to the Rails to Trails Act. But the Court disagrees.

The United States was not a party to the *Glowdena Finnigan* case. Therefore, the issue of the United States' interests under the Rails to Trails Act, if any, was not advanced by any party to the case, and was not addressed by the court. *Glowdena Finnigan* does not state the broad holding Finnigan suggests.

### f. *King County* Precludes Application of an Unrelated Prior Decree

Again, the thrust of Finnigan's summary judgment argument relies upon decrees of abandonment entered with respect other parcels of land along the 20-Mile Segment. Finnigan and the United States each rely upon the decision in *King County v. Burlington Northern Railroad Corporation*, 885 F. Supp. 1419 (W.D. Wash. 1994) to support their respective positions as to the proper application of 43 U.S.C. § 912 and judicial decrees of abandonment. But for the reasons discussed, *King County* clearly rejected the same theory Finnigan advances in this case.

The decision in *King County* focused upon the public highway exception to the transfer of the reversionary interest in land underlying a right of way as described in section 912. Section 912 excepts from a transfer "such part [of the right of way] as may be embraced in a public highway legally established within one year after the date of" the decree of abandonment." 43 U.S.C. § 912. King County, Washington sought to establish that a specific section of a 10-mile segment of a railroad right of way had been abandoned, and that a portion of that section of the right of way was embraced by King County as a public highway within one year of the date of the required declaration of abandonment. *King County*, 885 F. Supp. at 1420.

The public highway exception in section 912 is duly invoked "if 1) a court of competent jurisdiction has (or does) declare the right of way abandoned by [the railroad company], and 2) the [plaintiff] has (or does) embrace the right of way in a public highway within one year after such a court decree." *King County*, 885 F. Supp. at 1422. The primary dispute between the parties was with regard to the proper legal effect to be given to a prior declaration of abandonment entered in the courts of the State of Washington pertaining to a different parcel of land, but nonetheless a parcel of land that was on the same 10-mile segment of abandoned railroad right of way involved in the *King County* case. *King County*, 885 F. Supp. at 1423 (referring to the prior declaration of abandonment entered in *City of Buckley v. Burlington Northern Railroad Corp.*, 723 P. 2d 434 (Wash. 1986)).

In *King County*, Burlington Northern presented the same argument Finnigan presents in this case as to the proper application of a prior declaration of abandonment. Burlington Northern argued the declaration entered in *City of Buckley* constituted the necessary decree of abandonment applicable to the separate parcel of land at issue in *King County* because the lands at issue in *City of Buckley* and *King County* were each part of the same 10-mile segment of abandoned railroad. *King County*, 885 F. Supp. at 1423. Therefore, Burlington Northern argued that the date of the declaration in the *City of Buckley* entered more than one year prior to King County's public highway precluded King County from acquiring title to the right of way for its public highway. *Id*.

But the court in *King County* rejected Burlington Northern's argument and concluded that the declaration of abandonment entered in *City of Buckley* as to the specific property at issue in *City of Buckley* "does *not* constitute a 'declaration or decree' of abandonment as to the right of way now before the Court, within the meaning of Section 912." *King County*, 885 F. Supp. at 1424 (emphasis in original). The *King County* court identified the question as "whether [*City of*] *Buckley* constitutes a decree or declaration that the right of way now in question was abandoned, or whether its effect for Section 912 purposes was limited to that portion of the line […] which was in contention" in the *City of Buckley* case. *Id*.

The significant relevant substance of the decision in *King County* highlighted the fact that the portion of the right of way at issue in *City of Buckley*

37

was different from the specific portion of the right of way at issue in *King County*.[6]
*King County*, 885 F. Supp. at 1424-25. The court found irrelevant the fact "that both the parcel of the right of way in issue in [*City of*] *Buckley* and that parcel in issue [in *King County*] are of one and the same" 10-mile segment of abandoned railroad line. *Id.* at 1425. "Since this portion of the right of way [involved in *King County*] was *not* involved in [the *City of Buckley*] lawsuit, or even mentioned in the decision, [the declaration of abandonment in the *City of Buckley*] cannot possibly have the effect" of operating as the necessary declaration of abandonment to be applied to the portion of the right of way at issue in *King County*. *Id.*

The Court finds the holding in *King County* precludes Finnigan's argument for the application of prior decrees of abandonment regarding other properties to the Finnigan Property. *King County* held that such procedure cannot be employed.

Despite the ruling in *King County*, Finnigan still asserts the decision supports its position in this case. Finnigan argues *King County* stands for the proposition that a decree of abandonment is properly issued in 1994 under section 912 even though the decree was entered six years after the enactment of the Rails to Trails Act. But for several reasons, the Court concludes *King County* does not support the asserted proposition.

---

[6]Although the court in *King County* also found there existed various limitations as to the jurisdiction and venue of the state court in *City of Buckley*, those limitations are not relevant to the decision in this case.

The decision in *King County* did not address the same specific legal question at issue in this case regarding the effect of a decree of abandonment entered subsequent to the Rails to Trails Act. The only legal question at issue in *King County* was whether King County could take title to that portion of an abandoned railroad right of way embraced by a public highway King County created. *King County* did not address the issue of the transfer of title to the balance of the right of way that was not embraced by the public highway. The legal question of whether title to the balance of the right of way should transfer to the owner of the land underlying the right of way pursuant to section 912, or whether that title should transfer to the United States under the Rails to Trails Act at 16 U.S.C. § 1248(c) was not presented to the court in *King County*. In fact, the Rails to Trails Act was not discussed at all in *King County*.

Furthermore, the United States was not a party to the lawsuit in *King County*, and the court expressly stated that "the Court does not have before it any possible competing claims from third parties, and this decision addresses only the issues now presented." *King County*, 885 F. Supp. at 1425. Therefore, the Court concludes the decision in *King County* does not support Finnigan's arguments.

## IV. Conclusion

Based on the foregoing, the Court concludes Finnigan cannot rely upon prior declarations of abandonment – declarations issued under the Abandoned Railroad Right of Way Act at 43 U.S.C. § 912 in other cases litigated prior to the Rails to

Trails Act – as sufficient to trigger section 912 and the transfer to Finnigan of title to the right of way where it traverses the Finnigan Property. Those other declarations pertained to portions of the right of way in the 20-Mile Segment that are different from the portion of the right of way at issue in this case affecting the Finnigan Property. Thus, they do not satisfy the legal requirement of the second prong of section 912 as it applies to the Finnigan Property.

Also, Finnigan cannot rely upon cases litigated under section 912 after the enactment of the Rails to Trails Act because in the cases discussed herein, either the United States did not assert its rights under the Rails to Trails Act, or the Act was not at issue in the cases.

Here, unlike the circumstances in *Noxon Fire* where the United States did not assert an interest under the Rails to Trails Act, the United States affirmatively asserts those interests in this case. Therefore, IT IS HEREBY RECOMMENDED that Finnigan's motion for summary judgment be DENIED. Again, the United States does not advance a counterclaim requesting a declaration that title to the subject right of way transferred to the United States under the Rails to Trails Act. Therefore, this recommendation does not address that specific issue.

DATED this 18th day of June, 2019.

Jeremiah C. Lynch
United States Magistrate Judge