IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ESTATE OF GLOWDENA B. FINNIGAN,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CV 18–109–M–DLC–KLD<br><br>ORDER |

On June 18, 2019 United States Magistrate Judge Jeremiah C. Lynch entered his Findings and Recommendation recommending that Plaintiff Estate of Glowdena Finnigan's Motion for Summary Judgment (Doc. 16) be denied. (Doc. 31.) The Estate objects and is therefore entitled to de novo review of those findings and recommendations to which it specifically objects. 28 U.S.C. § 636(b)(1)(C). This Court reviews for clear error those findings and recommendations to which no party objects. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted). For the reasons explained, the Findings and Recommendation is adopted in full.

1

## BACKGROUND

The Estate seeks to quiet title to a stretch of riverfront land once used by the Northern Pacific Railroad Company ("Northern Pacific"). In the early nineteenth century, this land belonged to the United States. "Beginning in 1850, Congress passed a series of statutes granting public lands to private railroad companies to spur the construction of a cross-country railroad." *Avista Corp. Inc. v. Wolfe*, 549 F.3d 1239, 1242 (9th Cir. 2008). In 1864, Congress enacted the Northern Pacific Railroad Company Land Grant Act, which gave Northern Pacific a right of way to construct a railroad from Lake Superior to the Puget Sound, including two hundred feet on either side of its tracks. *Id.* In legal terms, Northern Pacific held this land in the form of a limited fee, and the United States retained a reversionary interest should the land ceased to be used for railroad purposes. *Vieux v. E. Bay Reg'l Park Dist.*, 906 F.2d 1330, 1332 (9th Cir. 1990). In the 1880s, Northern Pacific constructed its railroad through western Montana. The property at issue is a stretch of land along the southside of the Clark Fork River outside of Noxon, Montana.

In 1922, the Estate's predecessor-in-interest acquired a land patent under the Homestead Act of 1862, which included land embraced by Northern Pacific's right of way. That same year, Congress enacted the Abandoned Railroad Right of Way Act ("Abandoned Railroad Act" or § 912) at 43 U.S.C. § 912 which redirected the transfer of "abandoned railroad lands to which the United States held a right of

2

reverter." *Id.* at 1243. The Abandoned Railroad Act provides that, upon abandonment, rights of way pass to the owner of the land traversed by the right of way instead of the United States. 43 U.S.C. § 912. For the landowner to acquire legal title under § 912, "the railroad must (1) cease 'use and occupancy' of the rights of way and (2) abandonment must be 'declared or decreed' by a court of competent jurisdiction[.]" *Avista Corp. v. Sanders County*, 485 F. Supp. 2d 1176, 1185–87 (D. Mont. 2007) *overruled on other grounds by Avista Corp. Inc.*, 549 F.3d 1239. The Act also contains a public highway exception that prevents transfer of title to the landowner in the event a public highway is constructed along the abandoned right of way. 43 U.S.C. § 912.

In the 1950s, Northern Pacific retired roughly 20 miles of railroad along the Clark Fork River ("the 20-mile segment"), including the stretch that traversed the Finnigan property. Northern Pacific rerouted this segment from the southside to the northside of the river in anticipation that the Washington Water Power Company's construction of two hydroelectric dams would flood sections of the southside tracks. In the years that followed, several of the Estate's neighboring landowners quieted title to property along the southside right of way. (*See* Docs. 1-3; 1-4.)

Then, in 1988 Congress enacted the National Trails System Improvements Act ("Improvements Act" or § 1248(c)). 16 U.S.C. § 1248(c). The Act did not

3

repeal the Abandoned Railroad Act, however, it designated that the United States would, once again, retain title to "any and all right, title, [and] interest . . . in all rights of way of the type described" in the Abandoned Railroad Act. *Id.*

This case presents a question of whether the Abandoned Railroad Act (directing title to private landowners) or the Improvements Act (directing title to the United States) governs disposition of the Estate. (Doc. 31 at 17.)

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The movant's burden is satisfied when the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts

4

showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks omitted).

## DISCUSSION

In his Findings and Recommendation, Judge Lynch correctly determined that (1) the Estate properly invoked the United States' waiver of sovereign immunity; (2) this action is not barred by the statute of limitations; and (3) that the United States is not collaterally estopped from disputing the Estate's claim to title.[1] (*See* Doc. 31 at 6–16.) Judge Lynch also determined that the Improvements Act controlled disposition of the property. For this reason, he recommended that the Estate's Motion for Summary Judgment be denied.[2] (Doc. 31 at 18–19.) The Estate objects to the determination that the Improvements Act governs, which entitles it to de novo review of that question.

The Estate argues that its motion for summary judgment should be granted for either of two reasons: (1) the Improvements Act does not apply to past abandonments—and the right of way here was abandoned in 1958; and (2) even if the Improvements Act applies, the prior judicial decree of abandonment in the

---

[1] As no party objects to these findings, the Court has reviewed for clear error and found the Magistrate Judge's analysis to be entirely correct.

[2] As noted by Judge Lynch, the United States has not filed a counterclaim and so the only question presented is whether the Estate is entitled to summary judgment, not who owns the right of way. (Doc. 31 at 19.)

5

1980 *Bennett* case had the legal effect of transferring title to all neighboring landowners along the 20-mile segment. (Doc. 33 at 3.)

I.  **Whether the Improvements Act applies to physical abandonments that occurred prior to 1988.**

The Ninth Circuit has not addressed the scope of the Improvements Act. *See Avista Corp. Inc.*, 549 at 1251 n.12. In *Avista Corporation*, the Ninth Circuit resolved an ownership dispute over property along the same 20-mile segment and determined that Northern Pacific had ceased its use and occupancy of the line in 1958. *Id.* at 1243, 1247, 1249. Even though the action was brought in 2006, well after enactment of the Improvements Act, the parties did not raise or brief how § 1248(c) governed disposition of the right of way. *Id.* at 1251 n.12. The court noted that "whether § 912 applies to declarations of abandonment issued after the effective date of the National Trails System Improvements Act" was an open question. *Id.* However, because the court determined that disposition of the land implicated the public highway exception,[3] and both § 912 and § 1248(c) contained such an exception, the court was able to resolve the dispute without answering whether § 912 or § 1248(c) applied. *Id.*

---

[3] Though § 912 was enacted to transfer the United States' reversionary interest to the private landowner whose property embraced a railroad right of way, Congress recognized the importance of maintaining public access and transportation. *See Avista Corp. Inc.*, 549 F.3d at 1243. "Through the public highway exception, Congress sought to ensure that former rights of way could continue to be used for public transportation purposes" by providing that public entities retain a one-year period after a "decree of abandonment" to place a public highway along the right of way, thereby divesting the adjacent landowner of title. *Id.*

6

The Estate urges the Court to conclude that the Improvements Act applies only to abandonments that occur, as a factual matter, after the date of enactment. In a nutshell, it asserts that the legislative history,[4] the prior stance taken by the government in the *Noxon Fire* case—a quiet title action to property along the same 20-mile segment,[5] and general principles of fairness support this view.

Despite the proliferation of abandoned railroad tracks across the country, there are only a handful of court decisions disposing of title under § 912 and even fewer decisions that address title disputes after enactment of the Improvements Act. *See Samuel C. Johnson 1988 Tr. v. Bayfield Cty., Wis.*, 649 F.3d 799, 806 (7th Cir. 2011); *see, e.g., Samuel C. Johnson 1988 Tr. v. Bayfield Cty., WI*, 470 F. Supp. 2d 958, 959 (W.D. Wis. 2007), *vacated sub nom. Samuel C. Johnson 1988 Tr. v. Bayfield Cty., Wis.*, 520 F.3d 822 (7th Cir. 2008). Nevertheless, the question posed by the Estate is answered by the text of § 1248(c).

---

[4] The Estate argues that the legislative history of the Improvements Act evinces a clear intent that it applies only to "future abandonments." (Doc. 33 at 5–6.) The Court need not look to the legislative history to gather what is plain from the text: The Improvements Act applies to all abandoned rights of way as of October 4, 1988. 16 U.S.C. § 1248(c). Nevertheless, as Judge Lynch noted, the committee comments cited by the Estate are ambiguous because they do not clarify whether "future abandonments" refers to a court's official decree of abandonment or a railroad's cessation of use and occupancy. (Doc. 31 at 13.) The Court gives no weight to ambiguous legislative history.

[5] Whatever position the Government took as to the specific land at issue in the *Noxon Fire* case has no bearing on whether § 1248(c) preserves the United States' reversionary interest here. *Samuel C. Johnson 1988 Tr. v. Bayfield Cty., Wis.*, 520 F.3d 822, 831–32 (7th Cir. 2008) ("The Landowners fail to recognize . . . that there is a distinction between Congress modifying the disposal of the United States's reversionary interest and the United States Attorney's Office trying to do the same.").

Section 1248(c) plainly applies to *any* and *all* rights of way retained by the United States as described in § 912 after 1988.[6] Under § 912, the United States retains an interest in an abandoned right of way until: (1) the railroad has ceased its "use and occupancy" of the right of way and (2) abandonment has been "declared or decreed" by a court of competent jurisdiction or congressional act. *Vieux*, 906 F.2d at 1337. "Actual" or "physical" abandonment occurs when a railroad ceases its "use and occupancy" of a line. *Avista Corp. Inc.*, 549 F.3d at 1247. This is a factual inquiry that invokes common law principles of abandonment. *Vieux*, 906 F.2d at 1338; *Avista Corp. Inc.*, 549 F.3d at 1248. After "actual abandonment" the railroad's interest terminates but the landowner does not obtain title. *Id.* The landowner's interest is merely a non-vested "inchoate reversionary interest" that hangs in suspension, waiting for a court decree or act of Congress to declare the right of way abandoned. *Avista Corp. Inc.*, 549 F.3d at 1247. As such, the landowner's inchoate reversionary interest does not extinguish any interest held by the United States until it vests as prescribed by § 912. *See Marvin M. Brandt Revocable Tr. v. United States*, 572 U.S. 93, 108 (2014).

---

[6] The statute provides "Commencing October 4, 1988, any right, title, [and] interest of the United States in all rights-of-way of the type described in section 912 of Title 43, shall remain in the United States upon abandonment or forfeiture of such rights of way." 16 U.S.C. § 1248(c).

8

This conclusion is consistent with the characterization of the various interests entailed. For example, the United States' reversionary interest is resilient. *See Avista Corp. Inc.*, 549 F.3d at 1243; *N. Pac. Ry. Co. v. Townsend*, 190 U.S. 267, 271–72 (1903). As the sovereign grantor of the railroad's limited fee, the United States' future claim to the right of way prevents the railroad from voluntarily transferring its interest to another sovereign or private entity. *Avista Corp. Inc.*, 549 F.3d at 1243 (citing *Townsend*, 190 U.S. at 271–72)). And, because the railroad does not hold the land in fee simple absolute, the United States' interest prevents a private landowner from claiming title by adverse possession. *Id.* Under § 912, the only way a private landowner can extinguish the United States' interest is by court decree or act of Congress.

On the other hand, the private landowner's interest created under § 912 is limited. This landowner has no colorable claim until a railroad "actually abandons" a railroad line. *See id.* at 1247. After "actual abandonment" the landowner obtains an "inchoate reversionary interest" which can be immediately divested upon vesting if a public highway is established any time prior to a court's decree. *Id.* at 1251. If such a highway is not established prior to vesting, the public highway exception provides a public entity with one additional year with which to construct a highway and divest the landowner of title. *Id.*

9

By arguing that the Improvements Act does not apply to factual abandonments prior to 1988, the Estate, in effect, asks the Court to hold that the landowner's inchoate reversionary interest under § 912 is interminable in the sense that it can vest at any point in the future by a court decree. This is inconsistent with the limited and conditional nature of the landowner's interest. This interest was created by Congress in 1922 as the result of a national policy to preserve western land for private and largely agricultural use. *Marvin M. Brandt Revocable Tr.*, 572 U.S. at 97. In 1988, Congress decided to pursue a different agenda, preserving this land for public transportation and recreation. Rail Abandonments-Nat'l Trails Sys. Improvement Act (49 C.F.R. Part 1152), 6 I.C.C.2d 910, 911 (I.C.C. July 25, 1990).

As noted by the Estate, the Improvements Act amended § 912. *Samuel C. Johnson 1988 Tr.*, 520 F.3d at 831; *United States v. Brandt*, 496 F. App'x 822, 825 (10th Cir. 2012) (unpublished), *rev'd and remanded on other grounds sub nom. Marvin M. Brandt Revocable Tr.*, 572 U.S. 93. Therefore, a court analyzing a title dispute after 1988 must apply both statutes in tandem.

In 1958, Northern Pacific physically abandoned its use of the 20-mile segment. As a result of this physical abandonment, Northern Pacific's interest in the right of way terminated, leaving the Estate with an inchoate reversionary interest. In 1988, Congress enacted the Improvements Act. Section 1248(c)

applies to any and all interests retained by the United States as described in § 912. The United States reversionary interest in the right of way embraced by the Estate is an interest that falls under § 912. An action brought after 1988 dictates that title be retained by the United States. In 1996, the Estate obtained a court decree stating that Northern Pacific had abandoned the stretch of railroad at issue. (Doc. 1-6.) As a result of this decree, § 912 and § 1248(c) together determined that title to the right of way vested, but not in the Estate. Judge Lynch correctly determined that § 1248(c) applies and the Estate is not entitled to summary judgment.

## II. Whether the decree of abandonment in the *Bennett* decision vested any neighboring landowners' rights.

The Estate argues that the 1980 Sanders County District Court decision *Bennett v. United States* was a "decree" entered by a "court of competent jurisdiction" that the southside stretch of the railroad that transects both the Bennett and Finnigan properties was abandoned in 1958. The Estate argues that the *Bennett* decision satisfied § 912 and terminated any interest held by the United States in the entire 20-mile segment in 1980. (Doc. 17 at 12–13.)

The Estate arrives at this result based on its reading of § 912 which it construes to mean that a single court decree can function to transfer "all right, title and interest" in "any person" to whom the United States conveyed a "legal

subdivision or subdivisions traversed or occupied by such railroad."[7] From this language, the Estate concludes that a single decree under § 912 transfers title to any landowner relative to any parcel along a stretch of abandoned railroad. Additionally, the Estate argues that issue preclusion prevents the United States from relitigating the question. (Doc. 17 at 12–14.)

Judge Lynch disagreed the Estate's interpretation of § 912. He read § 912's reference to "any person" to mean any *single* person and therefore require a specific court decree of abandonment for each landowner. (Doc. 31 at 23.) Additionally, Judge Lynch determined that the decree of abandonment in the *Bennett* decision was particular to its parcel and had no legal effect on any neighboring parcel. (*Id.* at 24.) Judge Lynch found that the same was true of the *Olsen* decision in 1987. (*Id.* at 25.)

The question posed by the Estate is an interesting one: does a pre-1988 decree of abandonment impact the rights of neighboring landowners whose

---

[7] In what has been referred to as "probably the longest run on sentence in the entire United States Code," Brief of Amicus Curiae Rails-To-Trails Conservancy, 2007 WL 1406013 (May 4, 2007), § 912 provides in pertinent part:

> Whenever public lands of the United States have been . . . granted to any railroad company for use as a right of way . . . and use and occupancy of said lands for such purposes has ceased . . . by abandonment . . . declared or decreed by a court of competent jurisdiction, then . . . all right, title, and interest . . . shall . . . be transferred to and vested in any person . . . to whom . . . title of the United States [has been] granted, conveying . . . the whole of the legal subdivision . . . transversed or occupied by such railroad[.]

43 U.S.C. § 912.

property abuts the same abandoned tract? Though the *Bennett* decision predated *Avista Corporation*, this question was not posed in that litigation as it appears the parties were unaware that the Sanders County District Court had addressed Northern Pacific's physical abandonment of property along the 20-mile segment. *Avista Corp. Inc*, 549 F.3d at 1249. At least one other district court has confronted this same question. *Samuel C. Johnson 1988 Tr. v. Bayfield Cty., Wis.*, 634 F. Supp. 2d 956, 974 (W.D. Wis. 2009), *rev'd on other grounds*, 649 F.3d 799 (7th Cir. 2011). In *Samuel C. Johnston 1988 Trust*, the plaintiff raised the same argument advanced by the Estate: that a prior decree of abandonment for a neighboring property under § 912 was a court decree of abandonment that sufficed as to the entire line. *Id.* at 975. The court rejected this argument, concluding that to "determine the property rights of each landowner, the court would have to address each individual property grant." *Id.*

Despite the conclusion reached by the Western District of Wisconsin, the argument advanced by the Estate is not without appeal. When a railroad abandons a line, it does so in a single act of abandonment, not parcel by parcel. Therefore, it makes some sense that a court's decree of abandonment as to a single parcel could satisfy the requirements under § 912 for the entire line. When a railroad line is physically abandoned and some landowners obtain a court decree under § 912 but others do not, the rule advanced by the Estate avoids the legal fiction that a railroad

13

maintains small noncontiguous segments of servicable tracks on an otherwise abandoned line, which is the result imposed in this case. (*See* Doc. 21-6 at 1.)

Notwithstanding, the Court agrees with Judge Lynch that nothing in the *Bennett* or *Olsen* decisions can be read to include the Finnigan property. Both proceedings were expressly limited to the precise parcels for which the plaintiffs quieted title. (Docs. 1-3 at 2–13; 18 at 80–87.) The *Noxon Fire* case does not help the Estate either. *Supra* n.5. Furthermore, because the *Bennett* decision is parcel specific, the Estate's issue preclusion argument fails as well—*Bennett* did not actually litigate anything as to the Finnigan property. Judge Lynch's analysis of this issue is correct.

Finally, this result is consistent with the Ninth Circuit's conclusion that a court's decree of abandonment cannot retroactively transfer title to the date of physical abandonment. *Avista Corp. Inc.*, 549 F.3d at 1250. In *Avista Corporation*, the court reversed this Court's retroactivity holding, observing that a retroactive declaration of abandonment would deprive the state of its one-year window to construct a public highway across the right of way. *Id.* at 1250 n.11. The court reasoned that the litigation involved in seeking a declaration under § 912 was important to put the public on notice of its rights. *See id.* at 1250. If a prior court decision such as *Bennett* satisfies the requirements of § 912 as to an entire railroad line, the public is not adequately put on notice that its opportunity to

construct a highway is coming to a close. For the reasons indicated by Judge Lynch, the prior Sanders County District Court decisions did not have any legal effect on the Estate's interest. Accordingly, the Court will adopt the Findings and Recommendation in full.

IT IS ORDERED that the Findings and Recommendation (Doc. 31) is ADOPTED in full. The Estate's Motion for Summary Judgment (Doc. 16) is DENIED.

DATED this 25th day of October, 2019.

Dana L. Christensen, Chief Judge
United States District Court